U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 JAN 23 PM 5:23

CLERK

BY LAW
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

JONATHAN H. MILIZIA,

Plaintiff,

v.

JON MURAD, ERIN BARTLE, and ELIZA NOVICK-SMITH,

Defendants.

Case No. 2:24-cv-21

**ENTRY ORDER**
**DISMISSING AMENDED COMPLAINT AND DISMISSING CASE**
(Doc. 12)

Plaintiff Jonathan H. Milizia, representing himself, brings this action pursuant to 42 U.S.C. § 1983 against Jon Murad, in his official capacity as Chief of Police at the Burlington Police Department ("BPD"), Erin Bartle, in her official capacity as a BPD Officer (collectively, "BPD Defendants"), and Eliza Novick-Smith, in her individual capacity as well as her official capacity as a Deputy State's Attorney for Chittenden County. He alleges violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Plaintiff seeks $45,000 in damages in addition to injunctive relief.

## I. Procedural Background.

On May 2, 2024, Plaintiff was granted leave to proceed *in forma pauperis* ("IFP"), or without paying fees and costs. However, upon review under 28 U.S.C. § 1915(e)(2)(B), Plaintiff's proposed Complaint (Doc. 3) was dismissed for failure to state a claim against any defendant on which relief could be granted. The court did not *sua sponte* grant leave to amend but noted that Plaintiff could petition the court for leave to file an Amended Complaint on or before May 31, 2024.

Although the copy of the Order sent to Plaintiff was returned as undeliverable, on May 20, 2024, he received a copy of the Order and a notice of change of address form from the Clerk's Office. The next day, he filed a motion for an extension of time to file

an Amended Complaint. On June 6, 2024, the court granted his motion for an extension, allowing him until June 21, 2024 to file an Amended Complaint.

On June 7, 2024, Plaintiff filed an unsigned Amended Complaint. On June 24, 2024, the court issued an Entry Order requiring Plaintiff to provide a current mailing address and to correct the omission of his signature on the Amended Complaint. Plaintiff complied on July 12, 2024.

## II. Allegations of Plaintiff's Amended Complaint.

The Amended Complaint does not contain any allegations pertaining to the court's subject matter jurisdiction. Plaintiff asserts that his Fourth, Fifth, Sixth, and Fourteenth Amendment constitutional rights have been violated by Defendants as follows:

> July 12, 2023: Plaintiff contacted Defendant Novick-Smith's office "seeking advocacy and assistance" with regard to a family court case in which he was involved. (Doc. 12 at 1.) He provided "evidentiary documentation of . . . violent assaults perpetrated against him[.]" *Id.* He was advised the office "could not provide advocacy unless it's a criminal matter" and [was advised] to provide the materials to the police department. *Id.* at 2.
>
> August 29, 2023: Plaintiff provided the BPD with the evidentiary documentation.
>
> October 17, 2023: Defendant Bartle informed Plaintiff via a text message that he "was being 'charged[.]'" *Id.*
>
> October 20, 2023: Defendant Bartle stated that BPD never received the materials and that "anything received [from] Plaintiff or anyone on his behalf would be considered 'retaliatory' and 'would not' be considered[.]" *Id.* (capitalization omitted).
>
> October 30, 2023: Defendant Murad's office stated BPD had located the missing evidentiary documentation Plaintiff delivered on August 29, 2023.
>
> November 21, 2023: Defendant Murad's office wrote "a letter addressed to Plaintiff [stat]ing that BPD gave the evidentiary documentation back to Defendant Novick-Smith's Office." *Id.* (capitalization omitted).

Plaintiff asserts that Defendant Novick-Smith indicated she "did not have to acknowledge the evidentiary documentation[] because she doesn't view it as exculpatory[.]" (Doc. 12 at 2-3.) He alleges that Defendant Novick-Smith proceeded with his arraignment, even though he had not yet completed a request for a public defender.

Additionally, she engaged "in a proceeding without questions being answered and . . . attempt[ed] to have restrictions placed on Plaintiff despite no proof he committed a crime." *Id.* at 3. Neither "Novick-Smith nor the Court provided any answer to Plaintiff's question of which of the two jurisdictions provided in the constitution is the court attempting to operate under." *Id.* (capitalization omitted).

Plaintiff seeks damages in the amount of $15,000 from each Defendant, for a total amount of $45,000, and requests the court order:

> (1) Defendant Murad "to immediately revise any or all protocols or procedures that contain option(s) that violate anyone's inalienable rights and[] to provide equal protection under the 14th [A]mendment." *Id.* at 4.
>
> (2) Defendant Bartle "to perform a test or exam premised on the rights that she swore an oath to uphold and defend, before operating again in any official capacity." *Id.*
>
> (3) Defendant Novick-Smith "to immediately cease and desist from practicing or implementing any activism, or ideology in any official capacity. Immediately cease and desist carrying out the values and agenda(s) of their funding source, the open society foundation[,] in any official capacity." *Id.*
>
> (4) All Defendants "author a note of apology to Plaintiff citing they acknowledge he is a crime victim, and to cease and desist any further action(s) against Plaintiff[.]" *Id.* (capitalization omitted).

## III. Judicial Notice of Vermont Court Dockets.

Pursuant to Fed. R. Evid. 201(b),[1] the court takes judicial notice of the Vermont Superior Court, Family Division docket in *Amy Spooner v. Jon Milizia*, Case No. 23-FA-01526, Chittenden Unit. "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining "docket sheets are public records of which [a] court [can] take judicial notice").

[1] Plaintiff shall have an opportunity to be heard on whether judicial notice is proper upon timely request within fourteen (14) days of this Entry Order. *See* Fed. R. Evid. 201(e).

The docket reveals Ms. Spooner filed a complaint for relief from abuse together with a motion for emergency relief on June 1, 2023. Ms. Spooner was initially granted a temporary ex parte relief from abuse ("RFA") order and, following contested hearings on June 8 and June 22, 2023, she was granted a Final RFA Order through June 22, 2024. Mr. Milizia's motion to dismiss was denied on June 22, 2023. He was served with a copy of the Final RFA Order at the Superior Court clerk's office counter.

On June 29, 2023, Mr. Milizia filed a motion to vacate the RFA. On July 6, 2023, Ms. Spooner filed a motion to modify the Final RFA Order. On July 21, 2023, Mr. Milizia filed a witness statement, an affidavit, and a flash drive with the Superior Court. On August 31, 2023, the court held a hearing on the motions to modify and vacate, at which Mr. Milizia moved to recuse Vermont Superior Court Judge John Pacht. The hearing was continued until September 14, 2023. On September 11, 2023, Mr. Milizia filed an additional affidavit.

Magistrate Judge Brian Valentine presided at the September 14, 2023 hearing. The motions to modify and to vacate were denied, the Final RFA Order remained in force, and the case was closed. On October 18, 2023, Mr. Milizia filed a notice of appeal to the Vermont Supreme Court ("VSC"). The next day, he filed a motion to modify/clarify regarding the Final RFA Order in the Superior Court. On November 15, 2023, the VSC dismissed the appeal for lack of jurisdiction because the notice of appeal was filed out of time. On February 5, 2024, the Superior Court denied Mr. Milizia's motion to modify/clarify and again closed the case. On July 22, 2024, Mr. Milizia filed a second appeal to the VSC which remains pending. His brief was filed on November 12, 2024, and Ms. Spooner's brief was filed on January 14, 2025. The parties must request oral argument on or before January 31, 2025.

The court also takes judicial notice of the criminal case before the Vermont Superior Court, *Vermont v. Jonathan Milizia*, Case No. 23-CR-10328, Chittenden Unit. *See Richardson v. City of Rutland*, 2017 WL 921887, at *2 n.3 (D. Vt. Mar. 8, 2017) (taking judicial notice of the docket sheet in plaintiff's underlying criminal case). Defendant Novick-Smith represents the State in her capacity as Deputy State's Attorney.

## IV. Conclusions of Law and Analysis.

### A. 28 U.S.C. § 1915(e)(2)(B) Standard of Review.

Under the IFP statute, the court is required to conduct an initial screening of the Amended Complaint. *See* 28 U.S.C. § 1915(e)(2). The court must dismiss it if it determines that the action is "frivolous or malicious," fails to state a claim on which relief can be granted, or seeks monetary relief "against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B). Although the court must read a self-represented plaintiff's complaint liberally and construe it to raise the strongest arguments it suggests, *Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam), "[d]ismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). If subject matter jurisdiction is lacking, the court cannot proceed further. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B. 42 U.S.C. § 1983.

Under 42 U.S.C. § 1983, a claimant may bring suit against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, . . . [any] person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. The statute is "not itself a source of substantive rights" but rather provides "a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted). As a result, § 1983 occupies a position of "primacy" in providing a "basis for securing redress for constitutional violations[.]" *Pauk v. Bd. of Trs. of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981).

Although the Amended Complaint does not include a statutory reference to § 1983, the court analyzes whether Plaintiff has stated a claim under § 1983 because he seeks redress for constitutional violations. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017) ("The failure in a complaint to cite a statute, or to cite

the correct one, in no way affects the merits of a claim. Rather, factual allegations alone are what matters. That principle carries particular force where a [self-represented] litigant is involved.") (internal quotation marks, alterations, and citations omitted). To state a claim under § 1983, a plaintiff "must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration in original). It is well settled that § 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).

A claim asserted against an individual in his or her official capacity "is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]'" *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).

Under § 1983, "local governments are responsible only for their *own* illegal acts[;] . . . [t]hey are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted); *id.* (municipalities can be held liable "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation") (internal quotation marks omitted). A municipality may be held liable under § 1983 "only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). Accordingly, to hold a municipality liable under § 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

**1. Claims Against BPD Defendants.**

Official-capacity claims against the BPD Defendants are effectively claims against the governmental entity that employs them. As a result, the court construes Plaintiff's claims against Defendants Murad and Bartle as claims against the City of Burlington.[2] Plaintiff's Amended Complaint contains no allegations concerning how any policy caused the alleged violations of his constitutional rights. For this reason, he has failed to state a claim under § 1983 against the City of Burlington. *See Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (explaining a plaintiff must allege that he "suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality").

Because Plaintiff has failed to allege any plausible basis for municipal liability, the § 1983 claims for damages against Defendants Murad and Bartle in their official capacities must be DISMISSED.

**2. Claims Against Defendant Novick-Smith.**

Plaintiff seeks to sue Defendant Novick-Smith in her official capacity as a deputy State's Attorney as well as in her individual capacity. In her official capacity, however, Defendant Novick-Smith, as a state employee, is not a "person" subject to liability under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Thus, sovereign immunity bars Plaintiff's claims for monetary damages against Defendant Novick-Smith in her official capacity. *See Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013).

Plaintiff's claims against Defendant Novick-Smith in her individual capacity are barred by prosecutorial immunity. The United States Supreme Court has "stressed the

---

[2] "There are no statutes or ordinances in Vermont that permit[] a suit against a municipal police department. This [c]ourt has consistently held that such departments do not have the capacity to be sued." *Hollins v. S. Burlington Police Dep't*, 2020 WL 1033335, at *3 (D. Vt. Mar. 3, 2020) (citing *Bombard v. Volp*, 44 F. Supp. 3d 514, 528 (D. Vt. 2014)). As a result, the proper defendant for Plaintiff's claims against the BPD Defendants in their official capacities is the City of Burlington. *See id.*

importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Among the immunities that protect public officials from suit is the prosecutor's "absolute immunity from § 1983 suits for damages when he [or she] acts within the scope of his [or her] prosecutorial duties." *Imbler*, 424 U.S. at 420. In determining whether this absolute immunity applies, the court uses a "functional approach" to examine the actions allegedly performed by the defendant which give rise to the plaintiff's claims. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal quotation marks omitted). Under this functional approach, prosecutors are entitled to absolute immunity for those activities "'intimately associated with the judicial phase of the criminal process.'" *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler*, 424 U.S. at 430).

Absolute immunity from § 1983 liability covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). A prosecutor is therefore "absolutely immune from civil liability for initiating a prosecution and presenting the case at trial." *Hill*, 45 F.3d at 661. Even where there are allegations of a prosecutor's "knowing use of perjured testimony" or "deliberate withholding of exculpatory information[,]" the prosecutor is not "amenable to a civil suit for damages." *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (internal quotation marks omitted). Absolute immunity also extends beyond criminal proceedings "to other litigating activities of government attorneys, such as initiating and prosecuting child protection litigation." *Marshall v. Hanson*, 2015 WL 1429797, at *7 (D. Vt. Mar. 27, 2015) (citing *Robison v. Via*, 821 F.2d 913, 918 (2d Cir. 1987)). "[I]f as a result of prosecutorial misconduct, a defendant is compelled to face prosecution, or to suffer imprisonment or pretrial detention, the harm cannot be redressed via a § 1983 civil rights suit." *Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981).

Plaintiff alleges that Defendant Novick-Smith refused to acknowledge his "evidentiary documentation" and ignored phone calls and letters from witnesses. (Doc. 12 at 3.) As relief, he seeks damages as well as to have Defendant Novick-Smith

"acknowledge [Plaintiff] is a crime victim," "cease and desist any further action(s)" against Plaintiff, and provide "a note of apology[.]" *Id.* at 4.

"[I]t is well settled under both state and federal immunity standards that a prosecutor's decision *not* to prosecute is entitled to the same absolute immunity from civil suit as the decision to file charges." *O'Connor v. Donovan*, 2012 VT 27, ¶ 23, 191 Vt. 412, 425, 48 A.3d 584, 592-93. Plaintiff has failed to state a claim under § 1983 against Defendant Novick-Smith in either her official or individual capacity because any such claim is barred by sovereign immunity or prosecutorial immunity.

Because Plaintiff has failed to state a claim upon which relief can be granted against Defendants, Plaintiff's Amended Complaint (Doc. 12) is DISMISSED. *See* 28 U.S.C. § 1915(e)(2)(B); Fed. R. Civ. P. 12(b)(6). The Second Circuit has cautioned that a court "should not dismiss a pro se complaint without granting leave to amend at least once, unless amendment would be futile." *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (internal quotation marks omitted). In this case, the court has already granted leave to amend, and Plaintiff has not requested a further opportunity to amend his pleading. The court therefore declines to grant leave to amend *sua sponte*. *See Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004) (noting a district court does not "abuse[] its discretion in not permitting an amendment that was never requested").

## CONCLUSION

For the reasons stated above, upon review under 28 U.S.C. § 1915(e)(2)(B), Plaintiff's Amended Complaint (Doc. 12) is DISMISSED and this case is DISMISSED. The court certifies that any appeal would not be taken in good faith under 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of January, 2025.

Christina Reiss, Chief Judge
United States District Court